IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NANCY OTTLEY,

           Plaintiff,

           vs.                     Case No. 11-2502-JTM

ANIXTER INC., DOING BUSINESS AS
    ANIXTER FASTENERS,

           Defendant.

MEMORANDUM AND ORDER

Plaintiff Nancy Ottley has brought the present action alleging harassment and discrimination by her former employer, Anixter Inc. The court finds that Ottley's claims are alternatively time-barred, that she has failed to exhaust her administrative remedies, and that her claims fail to meet the elements of an actionable claim, the court hereby grants Anixter's Motion to Dismiss.

Accepting the allegations in her Complaint as true, Ottley worked at Anixter's warehouse in Hesston, Kansas as a second shift supervisor from November 3, 2008 to January 24, 2009, and then as a first shift hourly employee until September 25, 2009. Since that time, Ottley has been off work for a medical condition unrelated to her work. (Complaint, at ¶¶ 30-36). Ottley alleges that her employment was "effectively terminated" when her health insurance ended in July, 2010, and alleges this termination was because of sex or gender discrimination. (*Id.*, at ¶¶ 37, 51).

In Count I, she alleges that a hostile work environment existed at the warehouse, and that she was exposed to "despicable, sexually derogatory, humiliating and insulting remarks and actions," in violation of Title VII of the Civil Rights Act of 1964. (*Id*., at ¶ 42). The Complaint does not elaborate as to the content of these remarks, their timing, or the exact identity of the persons making them. The Complaint does indicate that these "remarks" occurred when she was a supervisor, in November, 2008. (Complaint, ¶15). The "actions" all occurred after she was a supervisor, and involved generalized co-worker rudeness and disagreements with co-workers regarding job duties and schedules. (*Id*., at ¶¶ 20-29). None of the harassing actions involved a supervisor or manager. As to the co-workers' actions, Ottley does not allege any physical touching, sexual advances, threats or indecent exposure. She does not allege any specific vulgar or sexually explicit language or comments directed to her.

In Count II, Ottley alleges disparate treatment sex discrimination under Title VII. Ottley states that her claim is based on a demotion from a supervisory position occurring on January 24, 2009 (*Id*., at ¶¶ 15-16), and co-worker rudeness and disagreements which occurred afterwards.

Count III alleges sexual harassment and sex discrimination under the Kansas Act Against Discrimination (KAAD), in terms identical to her allegations in Counts I and II.

Ottley filed a charge of discrimination with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission on December 8, 2009, alleging sexual harassment and sex/gender discrimination. She filed a second charge with the EEOC and the KHRC on October 14, 2010, alleging she was terminated and poorly treated in retaliation for filing her first charge. Ottley's second charge did not allege that her termination and treatment was because of sex or gender discrimination.

The defendant has moved to dismiss Count I of Ottley's claim on multiple grounds. It argues that her allegations of co-worker harassment are time-barred, that the claims are were insufficiently pervasive to constitute illegal harassment, and that the allegations in the Complaint are too nebulous to be actionable in light of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

Specifically, Anixter argues that the portion of Count I alleging harassment based on comments allegedly made to her in November, 2008 is time-barred, as the comments would have been made more than 300 days before Ottley's first, December 8, 2009 administrative charge. *See Jones v. Wichita State Univ.*, 528 F.Supp.2d 1182, 1191 (D. Kan. 2007). In response to Anixter's argument, Ottley argues that the November, 2008 harassment or "remarks" claim is not time-barred under the continuing violation doctrine. But other than generally reciting the background of the doctrine, Ottley makes no attempt to show how the doctrine is applicable to her allegations.

Courts may grant relief for wrongs occurring before the limitations period under the continuing limitations doctrine, but only to the extent that subsequent wrongs *of the same type* occurred within the limitations period as part of a pattern of harassment. *Amtrack v. Morgan*, 536 U.S. 101, 120 (2002). These subsequent wrongs must also independently rise to the level of actionable harassment. *Id*. at 117. Ottley's claims fail these standards because the November, 2008 "remarks" claim is fundamentally different from the type of "actions" she describes as occurring later. The former are described in the complaint as "sexually demeaning, derogatory, inappropriate or unwelcome comments" which were made directly to her while she was a supervisor, and made because she was a supervisor. (Dkt. 1, at ¶ 15). The latter are actions which occurred when she was no longer a supervisor, involved co-workers on a different shift who complained about her job performance, or who simply ignored her.

3

Ottley herself concedes in her Response that the events occurring during the limitations period "were not all overtly and blatantly sexually based in nature." (Dkt. 13, at 5-6). These actions involved different conduct, different perpetrators, an apparently different motivation (as Ottley was no longer a supervisor), and occurred over a different time period, and thus cannot rescue Ottley's claims as to the November, 2008 comments under the continuing violations doctrine.

That portion of Count I which Ottley did timely bring, relating to the events after her demotion, fails to show the existence of a environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nicely v. Rumsfeld*, No. 04-1384-WEB, 2005 U.S. Dist. LEXIS 37382, at *5, n.1, 9-10 (D. Kan. July 6, 2005)*, aff'd*, 2006 U.S. App. LEXIS 9505, at *2-3 (10th Cir. 2006). Here, most of Ottley's allegations are that her co-workers treated her discourteously by ignoring her, or that they complained of her job performance.

These may indeed, as she alleges in her Response, have "obviously caused [her] great angst." (Dkt. 13, at 7). But actionable sexual harassment requires more than subjective angst, it requires the existence of sexually offensive conduct that is both severe and pervasive. *See Haug v. City of Topeka*, 13 F.Supp.2d 1153, 1162 (D. Kan. 1998). Here, as noted earlier, Ottley has conceded that most of the actions of her co-workers were not sexual in nature. The only exception cited in her complaint is that her co-workers brought in music to play which she found offensive. But such actions by themselves fail to support a finding of severe and pervasive harassment. *See Scott v. Pizza Hut of Am.*, 92 F. Supp. 2d 1320, 1326 (M.D. Fla. 2000) (playing rap music which included sexually demeaning lyrics held not severe or pervasive).

4

Similarly, the claims advanced in Count II of Ottley's Complaint are also subject to dismissal for both procedural and substantive reasons. First, Count II advances the argument that Ottley was subjected to "effective termination" when she was not allowed to return to work with medical restrictions, and that this reflected sexual discrimination by the defendant. The claim is thus subject to dismissal for two reasons.

First, the second administrative charge presented by Ottley to the EEOC advanced only a claim of retaliation, not sexual discrimination. As such, Ottley failed to permit the reviewing agency the opportunity to reasonably investigate her current claim of discrimination, and the plaintiff accordingly failed to exhaust her administrative remedies. *See Gunnel v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir.1998). *See also Showalter v. Weinstein*, 233 Fed. Appx. 803, 808 (10th Cir. April 30, 2007)

Second, even if Ottley had incorporated a claim of sexual discrimination in her second charge, there is no evidence or allegation that she obtained a Notice of Right to Sue on her second charge. Under 42 USC § 2000e-5(f)(1), a Notice of Right to Sue is a condition precedent to suit under Title VII.

Further, Ottley has failed to allege that she was subjected to any adverse employment action during the relevant limitations period. Ottley does allege in Count II that she was demoted from supervisor in January of 2009, but this occurred more than 300 days before her first administrative charge. Such a demotion was a separate, discrete act, and any claim relating to it was time-barred when an administrative charge was not made within the statutory period. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

5

The remainder of Count II fails to allege the existence of any adverse employment action by the defendant.  Under Title VII, an adverse employment action is one which results in a significant change in employment status, a tangible monetary loss, or a harm to future employment opportunities. *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934-35 (10th Cir. 2001). As noted earlier, Ottley alleges at most the existence of discourteous conduct by co-workers, that these co-workers complained of her job performance, that some co-workers played music she found offensive, and that in May, 2009 she was given a different position. While perhaps disagreeable and offensive, the co-worker conduct fails to rise to the level of a change in her employment status. Similarly, the Complaint fails to make any allegation that the May, 2009 assignment reflected any material change in Ottley's job duties, or that it resulted in a decrease in pay.[1]

As courts analyze Title VII and KAAD claims under the same legal framework and pleading standards, *Swackhammer v. Sprint/United Mgmt.*, 493 F.3d 1160, 1174 (10th Cir. 2007), Ottley's claims under the state statute are subject to dismissal for the same reasons as her Title VII claims.[2]

IT IS ACCORDINGLY ORDERED this 22nd day of December, 2011, that the defendant's Motion to Dismiss (Dkt. 9 ) is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

[1] This is in direct contrast to the (time-barred) allegations in the Complaint that Ottley was demoted and subjected to a reduction in pay in January, 2009.

[2] The exception is that claims under KAAD are subject to a *shorter* statute of limitations, with an administrative charge being brought no more than six months after the alleged discrimination, compared to the 300-day limit of Title VII. *See Cowan v. Unified Sch. Dist. 501*, 316 F. Supp. 2d 1068 (D. Kan. 2004) (applying K.S.A. § 44-1105).